**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

_____

|  |  |  |
|---|---|---|
| [SEALED], | : | **FILED UNDER SEAL PURSUANT TO** |
|  | : | **31 U.S.C. § 3730(b)(2) AND** |
| Plaintiffs, | : | **WIS. STAT. § 20.931(5)(b)** |
|  | : |  |
| vs. | : | CIVIL ACTION NO. |
|  | : |  |
| [SEALED], | : | COMPLAINT |
|  | : |  |
| Defendant. | : | JURY TRIAL DEMANDED |
|  | : |  |
|  | : | **DO NOT PLACE IN PRESS BOX** |

_____

**FILED UNDER SEAL PURSUANT TO**
**31 U.S.C. § 3730(b)(2)AND WIS. STAT. § 20.931(5)(b)**


**- NOT FOR POSTING ON ELECTRONIC FILING SERVICES -**


Respectfully submitted,

GIMBEL REILLY GUERIN & BROWN, LLP

BY:    s/Patrick J. Knight
       PATRICK J. KNIGHT
       WI Bar No. 1013374
       pknight@grgblaw.com
       Two Plaza East, Suite 1170
330 E. Kilbourn Avenue
Milwaukee, Wisconsin 53202
(414) 271-1440
Attorneys for [SEALED]

KLINE & SPECTER
*A Professional Corporation*
    DAVID J. CAPUTO
    David.Caputo@klinespecter.com
    Not admitted in Wisconsin
    DAVID C. WILLIAMS
    David.Williams@klinespecter.com
    Not admitted in Wisconsin
1525 Locust Street, Nineteenth Floor
Philadelphia, Pennsylvania 19102
(215) 772-1000
Attorneys for [SEALED]


JOSEPH TRAUTWEIN & ASSOCIATES, LLC
    JOSEPH TRAUTWEIN
    jtrautwein@cpmiteam.com
    Not Admitted in Wisconsin
17 Auchy Road
Erdenheim, Pennsylvania  19038
(215) 764-2301
Attorneys for [SEALED]

---

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA and | : | **FILED UNDER SEAL PURSUANT TO** |
| THE STATE OF WISCONSIN | : | **31 U.S.C. § 3730(b)(2) AND** |
| *ex rel.* RELATOR DOE, | : | **WIS. STAT. § 20.931(5)(b)** |
|  | : |  |
|  | : | CIVIL ACTION NO. |
| Plaintiffs, | : |  |
|  | : | COMPLAINT |
| vs. | : |  |
|  | : | JURY TRIAL DEMANDED |
| WALGREEN, CO. | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : | **DO NOT PLACE IN PRESS BOX** |

---

On behalf of the United States of America pursuant to the United States False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"), and on behalf of the State of Wisconsin pursuant to the Wisconsin False Claims for Medical Assistance Law, Wis. Stat. § 20.931 ("WI FCA" or "Wisconsin False Claims Act"), Plaintiff-Relator Relator Doe ("Relator") files this *qui tam* Complaint for treble damages and civil money penalties against defendant Walgreen Co. (or "Walgreens"). These claims arise out of Walgreens' knowing and reckless submission of false and fraudulent claims for payment to the Wisconsin Medical Assistance (or "Medicaid") program as set forth below. In support of these claims, Relator alleges as follows:

## I.    INTRODUCTION

1.     This matter arises from violations of the FCA and WI FCA by Walgreens arising from its knowing submission of false and fraudulent claims for payment to the Medicaid program for diagnosis-restricted drugs that were dispensed in violation of Medicaid requirements.

## II.    THE PARTIES

### A.    Plaintiff-Relator

2.    Plaintiff-Relator Doe is an individual citizen of the State of Wisconsin who can be contacted through Relator's undersigned counsel.

### B.    Defendant

3.    Defendant Walgreen Co. ("Walgreens") is a publicly-traded Illinois corporation with a corporate headquarters at 200 Wilmot Road, Deerfield, Illinois 60015.

4.    Walgreens operates more than 8,600 stores in all 50 states, including approximately 226 stores in the State of Wisconsin.

## III.    JURISDICTION AND VENUE

5.    The Court has subject matter jurisdiction over this case pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331 and 1345.  This Court has supplemental jurisdiction over this case for the claims brought on behalf of the State of Wisconsin pursuant to 31 U.S.C. §3732(b) and 28 U.S.C. §1367, as recovery is sought on behalf of the State of Wisconsin arising from the same transactions and occurrences as the claims brought on behalf of the United States.

6.    Venue is proper in this judicial district pursuant to 31 U.S.C. § 3732(a) and/or 28 U.S.C. §1391(b) because Walgreens transacts business in this District and/or one or more of the acts committed by Walgreens and proscribed by 31 U.S.C. § 3729 occurred in this District.

7.    This Court has personal jurisdiction over Walgreens under 31 U.S.C. § 3732(a) because Walgreens transacts business in Wisconsin and because Walgreens submitted false or fraudulent claims directly or indirectly to the federal government in Wisconsin.

8.    Relator has direct and independent knowledge on which the allegations are based, is an original source of this information to the United States and the State of Wisconsin, and has

2

voluntarily provided the information to the United States and the State of Wisconsin before filing this action based on the information.

9.      This suit is not based on prior public disclosures of allegations or transactions in a criminal, civil or administrative hearing, lawsuit, investigation, audit or report, or from the news media.  To the extent that there has been any public disclosure, Relator Doe is an original source under 31 U.S.C. § 3730(e)(4) and Wis. Stat. § 20.931(11)(b).

## IV.    STATUTORY AND REGULATORY BACKGROUND

### A.    Medicaid

10.      Medicaid is a federal health insurance system that is administered by the states and is available to low-income individuals and families who meet eligibility requirements determined by federal and state law.  Medicaid pays for items and services pursuant to plans developed by the states and approved by the United States Department of Health and Human Services ("HHS") through the Centers for Medicare & Medicaid Services ("CMS").  42 U.S.C. §§ 1396a(a)-(b).  States pay health care providers, including physicians, according to established rates, and the federal government then pays a statutorily established share of "the total amount expended … as medical assistance under the State plan."  *See* 42 U.S.C. § 1396b(a)(1).

11.      At all relevant times, the United States has provided funds to Wisconsin for its Medicaid (also known as "Medical Assistance" or "MA") programs, which Wisconsin administers through the Wisconsin Department of Health Services ("DHS"), and HHS, through CMS, has ensured that Wisconsin has complied with minimum federal standards in its administration of the Medicaid programs.

3

**B.      BadgerCare Plus**

12.      BadgerCare Plus is a healthcare program for children under 19 years of age and families in Wisconsin.  BadgerCare Plus offers free or low-cost health care coverage to many families and pregnant women in Wisconsin.  BadgerCare Plus is designed for people who do not currently have access to health insurance.  *See* Wis. Stat. § 49.665.  To be reimbursed for services provided to members enrolled in BadgerCare Plus, providers are required to adhere to Wisconsin Medicaid regulations.  *See* Wis. Admin. Code §§ DHS 101.01 and DHS 101.03(17r).

**C.      SeniorCare**

13.      SeniorCare is Wisconsin's Prescription Drug Assistance Program for Wisconsin residents who are 65 years of age or older and who meet enrollment requirements.  To be reimbursed for services provided to members enrolled in SeniorCare, providers are required to adhere to Wisconsin's Medicaid regulations. *See* Wis. Admin. Code § DHS 109.52(1)(a).

**D.      Medicaid Regulations for Diagnosis-Restricted Drugs**

**1.      Definitions**

14.      A "provider" is a person who has been certified by DHS to provide health care services to recipients and to be reimbursed by the Wisconsin "MA" program for those services. Wis. Admin. Code § DHS 101.03(137).  A "dispensary provider," which includes pharmacies, is a provider who dispenses drugs, medical supplies or equipment upon a prescription or order from a prescriber authorized to prescribe such items.  *Id.* §101.3(45).

15.      As part of enrollment, providers are required to maintain "[a]ny and all prescriptions necessary to disclose the nature and extent of services provided and billed" under Wisconsin Medicaid.  Wis. Admin. Code §§ DHS 105.02(6)(c) and DHS 105.2(4),(7)(b)(1).

### 2. Reimbursement of claims, generally

16. DHS must reject payment for claims which fail to meet program requirements. Wis. Admin. Code § DHS 107.02(1)(a).

### 3. Reimbursement of claims for diagnosis-restricted drugs

17. Pharmacies may not dispense drugs to Medicaid beneficiaries without the prescription order of a prescriber. Wis. Admin. Code § DHS 107.02(2m)(a)(10). In submitting claims for reimbursement, a pharmacy must, where directed, use an appropriate diagnosis code for identifying the services billed. *See id.* § 106.03(2)(a).

18. Since at least July 2001, Medicaid has restricted reimbursement for certain drugs and drug categories through use of a valid diagnosis code. *See* Wisconsin Medicaid and BadgerCare Pharmacy Handbook, Covered Services and Reimbursement Section, 9 (July 2001); *See id.* at 23-24 (listing certain diagnosis-restricted drugs).[1] Wisconsin Medicaid requires specific diagnosis codes for diagnosis-restricted drugs. *Id.* at 27. For diagnosis-restricted drugs prescribed for indications other than approved diagnoses, Wisconsin Medicaid requires prior authorization ("PA"), to include submission of peer-reviewed medical literature supporting the efficacy of the requested use of the drug. *Id.*

19. On September 1, 2007, Wisconsin Medicaid revised diagnosis code restrictions for certain drugs. *See* Wisconsin Medicaid and BadgerCare Update, No. 2007-64 at 1 (September 2007).[2] The Wisconsin Medicaid and BadgerCare Update dated September 2007 (hereinafter "2007 Update") requires that prescribers provide the diagnosis code or diagnosis

---

[1] DHS publishes handbooks, bulletins, and periodic updates to inform providers of changes in state or federal law, policy, billing procedures, and specific reimbursement changes. Wis. Admin. Code § DHS 108.02(4).

[2] "The *Wisconsin Medicaid and BadgerCare Update* is the first source of program policy and billing information for providers." Wisconsin Medicaid and BadgerCare Update, No. 2007-64 at 4 (emphasis original). "Although the *Update* refers to Medicaid recipients, all information applies to BadgerCare recipients and SeniorCare participants also." *Id.* (emphasis original).

5

description on prescriptions "for all diagnosis-restricted drugs." 2007 Update at 2. If a prescriber fails to include the diagnosis code on the prescription, pharmacy providers must contact the prescriber to obtain the diagnosis code or diagnosis description. *Id.* Wisconsin Medicaid prohibits pharmacy providers from obtaining the diagnosis code or diagnosis description from the drug recipient. *Id.*

20. Regarding claim submission for diagnosis-restricted drugs, the 2007 Update states as follows:

**Claim Submission**

*For Drugs with New Diagnosis Code Restrictions*
Pharmacy providers should submit claims for diagnosis-restricted drugs with the appropriate diagnosis code. When a claim is submitted with a missing or invalid diagnosis code, or with a code that is not a Medicaid-allowed diagnosis code, providers will receive Explanation of Benefits (EOB) code 510, which states the following:

> Denied. Prior authorization/diagnosis is required for a payment of this service. A valid PA number/diagnosis is required and/or the procedure must match the approved PA.

If this EOB response is received because the provider did not submit a Medicaid-allowed diagnosis code, a paper PA request with supporting documentation should be submitted to Wisconsin Medicaid.

2007 Update at 2.

21. Wisconsin Medicaid regularly publishes revisions to the drugs, drug categories, and associated acceptable diagnoses for diagnosis-restricted drugs. Wisconsin Medicaid's Pharmacy Data Tables include the following diagnosis-restricted drugs:

- amphetamine salt combo
- dextroamphetamine
- methylphenidate, ER
- Adderall and Adderall XR
- Concerta
- Focalin, XR
- Metadate CD

- Ritalin LA
- pemoline (Cylert)
- Daytrana
- Desoxyn
- Provigil
- Strattera
- Vyvanse

6

*See* Wisconsin Medicaid's Pharmacy Data Tables at 5-6.

22.     Wisconsin Medicaid classifies the above drugs as "Stimulants and Related Agents." These drugs are subject to abuse; as such, Wisconsin Medicaid strictly regulates the uses for which they can be prescribed. Other diagnosis-restricted drug categories include topical antibiotics, anticoagulants, anticonvulsants, antiemetics, oral antifungals, anti-Parkinson's agents, drugs to combat Hepatitis C, drugs for smoking cessation, hypoglycemic, opiod dependency agents, pulmonary arterial hypertension drugs, and topical immunomodulators.

**E.     The United States False Claims Act**

23.     The United States False Claims Act prohibits, *inter alia*, the following:

> knowingly presenting (or causing to be presented) to the federal government a false or fraudulent claim for payment or approval;

> knowingly making or using (or causing to be made or used) a false record or statement material to a false or fraudulent claim; and

> knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money to the Government.

31 U.S.C. §§ 3729(a)(1)(A), (13) and (g).

**F.     The Wisconsin False Claims for Medical Assistance Law**

24.     The Wisconsin False Claims Act prohibits, *inter alia*, the following:

> knowingly presenting (or causing to be presented) to any officer, employee, or agent of this state a false claim for medical assistance;

> knowingly making or using (or causing to be made or used) a false record or statement to obtain approval or payment of a false claim for medical assistance; and

> knowingly making or using (or causing to be made or used) a false record or statement to conceal, avoid, or decrease any obligation to pay or transmit money or property to the Medical Assistance program.

Wis. Stat. § 20.931(2)(a), (b) and (g).

### G. Wisconsin Statutes Regarding Medical Assistance Offenses

25. Wisconsin law prohibits, *inter alia*, the following:

> knowingly making or causing to be made any false statement or representation of a material fact in any application for a benefit or payment;

> knowingly making or causing to be made any false statement or representation of a material fact for use in determining rights to a benefit or payment; and

> knowingly concealing or failing to disclose any event of which the person has knowledge that affects his or her initial or continued right to a benefit or payment or affects the initial or continued right to a benefit or payment of any other person in whose behalf he or she has applied for or is receiving a benefit or payment.

Wis. Stat. § 49.49(4m)(a)(1)-(3).

## V. DEFENDANT'S CONDUCT IN VIOLATION OF THE FCA AND WI FCA

26. As set forth in detail below, Walgreens has engaged in extensive fraudulent conduct in violation of the laws and regulations stated above, resulting in substantial actual loss to the United States and the State of Wisconsin.

### A. Billing for Diagnosis-Restricted Drugs Without Documented Diagnosis Codes or Diagnosis Descriptions

#### 1. Walgreens employees routinely submit claims for diagnosis-restricted drugs that do not have a diagnosis or diagnosis code, in contravention of Medicaid regulations.

27. Walgreens pharmacy employees regularly receive prescriptions for diagnosis-restricted drugs for which the provider has not included a diagnosis code or diagnosis description. Instead of calling the prescribing provider for the diagnosis code per the above Medicaid requirements, Walgreens employees routinely electronically submit claims using known acceptable diagnosis codes for these drugs. Such claims are submitted in reckless disregard as to whether or not the diagnosis code is accurate for that patient.

8

28.     Walgreens accepts paper prescriptions presented by patients, and accepts prescriptions provided via telephone, fax, and electronic submission from prescribers.

29.     When a patient presents a paper prescription to be filled by Walgreens pharmacy staff, a Walgreens technician scans the paper prescription into the Walgreens computer system, enters the data from the prescription into the computer system, and bills the insurer.

30.     In accordance with the laws set forth above, where the prescription is for a diagnosis-restricted drug, a Walgreens pharmacy employee should verify that the prescriber has included a Medicaid-approved diagnosis.  If no diagnosis is present, the Walgreens employee should call the prescribing provider to obtain the diagnosis code prior to billing Medicaid.  The employee should further document the phone call to the prescriber.  Routinely, Walgreens employees do not call the prescriber to obtain the patient's diagnosis when the diagnosis is absent from the prescription.

31.     During data entry into the Walgreens computer system, if the Walgreens pharmacy employee does not submit an acceptable diagnosis to the State, then the State will respond with a rejection notice.  When this rejection occurs, the Walgreens employee should call the prescribing provider to verify the diagnosis code prior to billing Medicaid.  If the verified diagnosis code is indeed unacceptable, the prescription should not be billed to Medicaid.  As stated before, Walgreens employees routinely do not call the prescriber.

32.     Instead, Walgreens employees take shortcuts in billing claims.  For example, Walgreens pharmacy employees use handwritten lists (or "cheat sheets") of common diagnosis (or "ICD-9") codes that Walgreens technicians use to bill prescriptions.[3]  These cheat sheets contain diagnosis codes applicable to diagnosis-restricted drugs such as Adderall, Ritalin,

---

[3] ICD-9 stands for "International Classification of Diseases, Ninth Revision."

Vyvanse, amphetamines, and dextroamphetamines. The cheat sheets also include diagnosis codes applicable to diagnosis-restricted devices such as the AeroChamber, blood glucose meters, test strips, and lancets.[4] Walgreens technicians have used, and continue to use, the cheat sheets to bill Medicaid for diagnosis-restricted drugs in contravention of Medicaid regulations.

33. In addition to the cheat sheets, in or about 2011, Walgreens management distributed the "Walgreens Passport to Pharmacy" pamphlet to employees in the Green Bay area. The pamphlet codifies Walgreen's practice of fraudulently submitting common diagnosis codes as part of claim reimbursement. The pamphlet includes a page titled "Common WISPA Denial Codes," including denial code 510 ("Needs an ICD-9 code").[5] The opposite page is entitled "Commonly Used ICD-9 Codes" and includes many of the aforementioned codes described on the handwritten list. Notably, the pamphlet does not direct Walgreens employees to contact the prescribing provider to obtain the diagnosis code or diagnosis description. Walgreens employees have used and continue to use, the pamphlet to bill Medicaid for diagnosis-restricted drugs in contravention of Medicaid regulations. Walgreens management continues to distribute the pamphlet upon employee request.

> ## 2. Specific examples of Wisconsin Medicaid beneficiaries receiving diagnosis-restricted drugs without any documentation of diagnosis.

34. As a direct result of the widespread disregard for Wisconsin Medicaid's requirements to provide documentation for diagnosis-restricted drugs, many beneficiaries received medications in violation of Medicaid's requirements, as defined above.

---

[4] The AeroChamber is used for patients who have difficulty in the coordination and control of using "Metered Dose Inhalers."

[5] "WISPA" is Walgreens shorthand for Wisconsin Medicaid.

35. By way of example, the following Medicaid beneficiaries below received diagnosis-restricted drugs from Walgreens pharmacies reimbursed by Medicaid in contravention of Medicaid regulations:

a. **Beneficiary 1** received approximately 10 prescriptions for diagnosis-restricted drug Adderall XR at a Walgreens Store between November 15, 2012, and August 15, 2013, without documentation of his diagnosis. The amount reimbursed by Wisconsin Medicaid for these prescriptions totaled $6,578.20. There is no documentation of a diagnosis for these prescriptions.

b. **Beneficiary 2** received approximately 34 prescriptions for diagnosis-restricted drugs Concerta and methylphenidate (Ritalin) from four Walgreens stores between December 2, 2012, and June 11, 2014, without documentation of her diagnosis. The amount reimbursed by Wisconsin Medicaid for these prescriptions totaled $5,578.06. In July 2014, staff at a Walgreens store discovered that the ICD-9 code for Beneficiary 2's documented diagnosis is 327.11 ("idiopathic hypersomnia with long sleep time"), which is not a Medicaid-approved diagnosis.

c. **Beneficiary 3** received approximately 14 prescriptions for diagnosis-restricted drugs Adderall, Adderall XR, and d-amphetamine XR from two Walgreens stores between December 8, 2013, and June 12, 2014, on which no documentation of her diagnosis was noted or the diagnosis indicated was "idiopathic hypersomnolence" – an unapproved diagnosis. The amount reimbursed by Wisconsin Medicaid for these prescriptions totaled $4,318.28. Beneficiary 3's prescriptions for Adderall XR and amphetamine-dextroamphetamine dated May 30, 2014, contain a diagnosis of "idiopathic hypersomnolence." The ICD-9 codes for this diagnosis are 327.11 ("idiopathic hypersomnia with long sleep time") and 327.12 ("idiopathic hypersomnia without long sleep time"), neither of which is a Medicaid-approved diagnosis. Nevertheless, Walgreens billed for these prescriptions, using the diagnosis code for Attention Deficit Disorder (314.00).

d. **Beneficiary 4** received approximately 22 prescriptions for diagnosis-restricted drugs that had no documentation of his diagnosis or diagnosis code that were billed to Medicaid between November 23, 2012, and November 26, 2013. The amount reimbursed by Wisconsin Medicaid for these prescriptions totaled $3,452.19.

e. **Beneficiary 5** received approximately 18 prescriptions for diagnosis-restricted drug Vyvanse from two Walgreens stores between

11

November 28, 2012, and June 3, 2014, without documentation of her diagnosis. The amount reimbursed by Wisconsin Medicaid for these prescriptions totaled $3,317.84. There is no documentation of a diagnosis for these prescriptions.

f.  **Beneficiary 6** has received approximately 14 prescriptions for diagnosis-restricted drug Metadate CD from four Walgreens stores from December 2012 to present without documentation of her diagnosis. The total cost reimbursed by Wisconsin Medicaid for these prescriptions was $2,703.48.

g.  **Beneficiary 7** has received approximately 13 prescriptions for diagnosis-restricted drug Vyvanse (lisdexamfetamine) from a Walgreens store from June 2013 to present without documentation of his diagnosis. The amount reimbursed by Wisconsin Medicaid for these prescriptions totaled $2,504.28.

h.  **Beneficiary 8** has received approximately 18 prescriptions for diagnosis-restricted drugs d-amphetamine and Adderall XR from a Walgreens store from November 2012 to present without documentation of her diagnosis. The amount reimbursed by Wisconsin Medicaid for these prescriptions totaled $1,637.06.

i.  **Beneficiary 9** has received approximately 11 prescriptions for diagnosis-restricted drugs Adderall (amphetamine and dextroamphetamine combo) 20 mg and Vyvanse (lisdexamfetamine) from a Walgreens store from June 2013 to present without documentation of her diagnosis. The amount reimbursed by Wisconsin Medicaid for these prescriptions totaled $1,949.44.

j.  **Beneficiary 10** has received approximately 16 prescriptions for diagnosis-restricted drugs d-amphetamine and Adderall from a Walgreens store from November 2012 to present without documentation of his diagnosis. The amount reimbursed by Wisconsin Medicaid for these prescriptions totaled $1,344.58.

k.  **Beneficiary 11** has received approximately 6 prescriptions for diagnosis-restricted drug Adderall (both 10mg and XR 20mg formulations) from three Walgreens stores between December 3, 2012, and June 10, 2014, without documentation of his diagnosis. The amount reimbursed by Wisconsin Medicaid for these prescriptions totaled $1,075.98.

l.  **Beneficiary 12** received approximately 15 prescriptions for diagnosis-restricted drug amphetamine-dextroamphetamine (Adderall) between January 22, 2013, and April 24, 2014, without documentation of her

diagnosis or diagnosis code. The amount reimbursed by Wisconsin Medicaid for these prescriptions totaled $1,489.30. On or about May 27, 2014, a Walgreens store contacted Beneficiary 12's prescriber to obtain Beneficiary 12's diagnosis code. The prescriber informed Walgreens that Beneficiary 12's diagnosis code is 296.50 ("bipolar disorder"). Medicaid does not approve this diagnosis code for amphetamine-dextroamphetamine (Adderall). Presumably, Beneficiary 12's prescriber has always prescribed her Adderall pursuant to her diagnosis of bipolar disorder. To Relator's knowledge, Walgreens has not reimbursed Medicaid for the 15 prescriptions.

m. **Beneficiary 13** has received approximately 8 prescriptions for diagnosis-restricted drug Vyvanse from five stores between November 1, 2013, and May 27, 2014, without documentation of her diagnosis or diagnosis code. The amount reimbursed by Wisconsin Medicaid for these prescriptions totaled $1,577.24. Beneficiary 13's diagnosis was 296.20 ("Major depressive affective disorder, single episode, unspecified"). Medicaid does not approve this diagnosis code for Vyvanse. To Relator's knowledge, Walgreens has not reimbursed Medicaid for the 8 prescriptions.

36. Based on Relator's observations and experience, Walgreens' practice of billing for the above diagnosis-restricted drugs without a diagnosis or diagnosis code from the provider is systemic and state-wide.

37. Based on Relator's observations and experience, Relator believes Walgreens' practice of billing for other diagnosis-restricted drug categories (*e.g.*, topical antibiotics, anticoagulants, anticonvulsants, antiemetics, oral antifungals, anti-Parkinson's agents, drugs to combat Hepatitis C, drugs for smoking cessation, hypoglycemic, opiod dependency agents, pulmonary arterial hypertension drugs, prenatal vitamins, and topical immunomodulators) without a diagnosis or diagnosis code from the provider is systemic and state-wide.

38. Based on Relator's observations and experience, Relator believes Walgreens' practice of billing for diagnosis-restricted devices, including the AeroChamber, blood glucose meters, test strips, and lancets, without a diagnosis or diagnosis code from the provider is systemic and state-wide.

13

### B. False Claims and the Government's Damages

39.    At all relevant times, Walgreens has had numerous customers who are beneficiaries of the government health programs described above.

40.    At all relevant times, Walgreens sought and received payment from Medicaid for patients receiving diagnosis-restricted drugs from its pharmacies.

41.    Walgreens knowingly and willfully billed Medicaid, and further knowingly and willfully failed to reimburse Medicaid, for diagnosis-restricted drug prescriptions billed that did not meet Medicaid's requirements.

42.    In some instances, Walgreens sought and received payment for beneficiaries for whom Walgreens lacked a documented diagnosis, but for whom Walgreens fraudulently supplied a diagnosis that coincidentally may have been accurate. These claims are false and fraudulent because the failure to have a documented, approved diagnosis at the time of claim submission is itself material, and cannot be cured by fraudulently supplying a diagnosis code as described herein.

43.    At all relevant times, Walgreens knowingly concealed and continues to conceal its obligation to pay or transmit money to the United States and the State of Wisconsin.

44.    The United States, through its carriers and intermediaries, has made payments to Walgreens and has been damaged in an amount to be determined. The United States is entitled to treble its actual damages and to civil penalties in the amount of $5,500 to $11,000 for each of the false claims submitted.

45.    The State of Wisconsin, through its carriers and intermediaries, has made payments to Walgreens and has been damaged in an amount to be determined. The State of

Wisconsin is entitled to treble its actual damages and to civil penalties in the amount of $5,000 to $10,000 for each of the false claims submitted.

## COUNT I
## (VIOLATION OF THE UNITED STATES FALSE CLAIMS ACT – 31 U.S.C. § 3729(a)(1)(A))

46.     Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

47.     Walgreens knowingly presented, or caused to be presented, and continues to present or cause to be presented, false and fraudulent claims for payment or approval to the United States – *i.e.*, the foregoing false and fraudulent claims for payments from Medicaid – in violation of 31 U.S.C. § 3729(a)(1)(A)).

48.     Said false and fraudulent claims were presented with Walgreens' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

49.     The United States relied on these false and fraudulent claims, was ignorant of the truth regarding these claims, and would not have paid Walgreens for these false and fraudulent claims had it known the falsity of said claims by Walgreens.

50.     As a direct and proximate result of the false and fraudulent claims made by Walgreens, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each such violation of the False Claims Act.

## COUNT II
## (VIOLATION OF THE UNITED STATES FALSE CLAIMS ACT –
## 31 U.S.C. § 3729(a)(1)(B))

51.     Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

52.     Walgreens knowingly made, used or caused to be made or used, and continues to make, use and cause to be made or used, false records or false statements material to the foregoing false or fraudulent claims to get these false or fraudulent claims paid and approved by the United States, in violation of 31 U.S.C. § 3729(a)(1)(B).

53.     Walgreens' knowingly false records or false statements were material, and upon information and belief continue to be material, to the false and fraudulent claims for payments it made and continues to make to the United States.

54.     Walgreens' materially false records or false statements are set forth above and include, but are not limited to false electronic claims submitted to Medicaid and supporting materials, and false certifications of the truthfulness and accuracy of claims submitted, to get false or fraudulent Medicaid claims paid or approved by the United States, in that the beneficiaries' prescriptions lacked documentation of a diagnosis code or diagnosis description at the time the claims were submitted, in contravention of the above regulations.

55.     These said false records or false statements were made, used or caused to be made or used, and continue to be made, used and caused to be made and used, with Walgreens' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

56.     As a direct and proximate result of these materially false records or false statements, and the related false or fraudulent claims made by Walgreens, the United States has

16

suffered damages and therefore is entitled to recovery as provided by the False Claims Act in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each such violation of the False Claims Act.

## COUNT III
### (VIOLATION OF THE UNITED STATES FALSE CLAIMS ACT – 31 U.S.C. § 3729(a)(1)(G))

57.     Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

58.     Upon information and belief, Walgreens knowingly made, used or caused to be made or used, and continues to knowingly make, use or cause to be made or used, false records or false statements, material to an obligation to pay or transmit money or property to the United States Government, or knowingly concealed and continues to conceal an obligation to pay or transmit money or property to the United States Government, or knowingly and improperly avoided or decreased, and continues to knowingly and improperly avoid and decrease, an obligation to pay or transmit money or property to the United States Government, in violation of 31 U.S.C. § 3729(a)(1)(G).

59.     As a direct and proximate result of the above conduct by Walgreens, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act of an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation of the False Claims Act.

## COUNT IV
### (VIOLATION OF THE WISCONSIN FALSE CLAIMS FOR MEDICAL ASSISTANCE LAW – WIS. STAT. § 20.931(2)(a))

60.     Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

17

61.     Walgreens knowingly presented, or caused to be presented, and continues to present or cause to be presented, false and fraudulent claims for payment or approval to the State of Wisconsin – *i.e.*, the foregoing false and fraudulent claims for payments from Medicaid – in violation of Wis. Stat. § 20.931(2)(a).

62.     Said false and fraudulent claims were presented with Walgreens' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

63.     The State of Wisconsin relied on these false and fraudulent claims, was ignorant of the truth regarding these claims, and would not have paid Walgreens for these false and fraudulent claims had it known the falsity of said claims by Walgreens.

64.     As a direct and proximate result of the above conduct by Walgreens, the State of Wisconsin has suffered damages and therefore is entitled to recovery as provided by the Wisconsin False Claims Act of an amount to be determined at trial, plus a civil penalty of $5,000 to $10,000 for each violation of the Wisconsin False Claims Act.

**COUNT V**
**(VIOLATION OF THE WISCONSIN FALSE CLAIMS FOR**
**MEDICAL ASSISTANCE LAW – WIS. STAT. § 20.931(2)(b))**

65.     Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

66.     Walgreens knowingly made, used or caused to be made or used, and continues to make, use and cause to be made or used, false records or false statements material to the foregoing false or fraudulent claims to get these false or fraudulent claims paid and approved by the State of Wisconsin, in violation of Wis. Stat. § 20.931(2)(b).

18

67. Walgreens' knowingly false records or false statements were material, and upon information and belief continue to be material, to the false and fraudulent claims for payments it made and continues to make to the State of Wisconsin.

68. Walgreens' materially false records or false statements are set forth above and include, but are not limited to false electronic claims submitted to Medicaid and supporting materials, and false certifications of the truthfulness and accuracy of claims submitted, to get false or fraudulent Medicaid claims paid or approved by the State of Wisconsin, in that the beneficiaries' prescriptions lacked documentation of a diagnosis code or diagnosis description at the time the claims were submitted, in contravention of the above regulations.

69. These said false records or false statements were made, used or caused to be made or used, and continue to be made, used and caused to be made and used, with Walgreens' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

70. As a direct and proximate result of the above conduct by Walgreens, the State of Wisconsin has suffered damages and therefore is entitled to recovery as provided by the Wisconsin False Claims Act of an amount to be determined at trial, plus a civil penalty of $5,000 to $10,000 for each violation of the Wisconsin False Claims Act.

**COUNT VI**
**(VIOLATION OF THE WISCONSIN FALSE CLAIMS FOR MEDICAL ASSISTANCE LAW – WIS. STAT. § 20.931(2)(g))**

71. Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

72. Upon information and belief, Walgreens knowingly made, used or caused to be made or used, and continues to knowingly make, use or cause to be made or used, false records

19

or false statements, material to an obligation to pay or transmit money or property to the State of Wisconsin, or knowingly concealed and continues to conceal an obligation to pay or transmit money or property to the State of Wisconsin, or knowingly and improperly avoided or decreased, and continues to knowingly and improperly avoid and decrease, an obligation to pay or transmit money or property to the State of Wisconsin, in violation of Wis. Stat. § 20.931(2)(g).

73.    As a direct and proximate result of the above conduct by Walgreens, the State of Wisconsin has suffered damages and therefore is entitled to recovery as provided by the Wisconsin False Claims Act of an amount to be determined at trial, plus a civil penalty of $5,000 to $10,000 for each violation of the Wisconsin False Claims Act.

## CLAIM FOR RELIEF

WHEREFORE, Relator requests that judgment be entered against defendant Walgreens for treble the amount of the United States' and the State of Wisconsin's respective damages to be determined at trial, and all allowable civil penalties, attorney's fees, interest and costs under the False Claims Act, the WI FCA, and for all other and further relief as the Court may deem just and equitable.

Dated this 14th day of August, 2014

Respectfully submitted,

GIMBEL REILLY GUERIN & BROWN, LLP

BY:    s/Patrick J. Knight
        PATRICK J. KNIGHT
        WI Bar No. 1013374
        pknight@grgblaw.com
        Two Plaza East, Suite 1170
330 E. Kilbourn Avenue
Milwaukee, Wisconsin 53202
(414) 271-1440
Attorneys for Plaintiff-Relator Doe

20

KLINE & SPECTER
*A Professional Corporation*
    DAVID J. CAPUTO
    David.Caputo@klinespecter.com
    Not admitted in Wisconsin
    DAVID C. WILLIAMS
    David.Williams@klinespecter.com
    Not admitted in Wisconsin
1525 Locust Street, Nineteenth Floor
Philadelphia, Pennsylvania 19102
(215) 772-1000
Attorneys for Plaintiff-Relator Doe


JOSEPH TRAUTWEIN & ASSOCIATES, LLC
    JOSEPH TRAUTWEIN
    jtrautwein@cpmiteam.com
    Not Admitted in Wisconsin
17 Auchy Road
Erdenheim, Pennsylvania  19038
(215) 764-2301
Attorneys for Plaintiff-Relator Doe